JOSEPH C. CAMPO, SB# 150035
  E-Mail: Joe.Campo@lewisbrisbois.com
WILLIAM E. PALLARES, SB# 187740
  E-Mail: William.Pallares@lewisbrisbois.com
DAVID D. SAMANI, SB# 280179
  E-Mail: David.Samani@lewisbrisbois.com
CALVIN J. LEE, SB# 307443
  E-Mail: Calvin.Lee@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants BIOWORLD MERCHANDISING, INC., et al.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DANA RUTH LIXENBERG, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>BIOWORLD MERCHANDISING, INC., a Texas Corporation, et al.<br><br>Defendants. | CASE NO. 2:15-cv-07242-MWF-MRW<br><br>**NOTICE OF BIOWORLD MERCHANDISING, INC.'S MOTION AND MOTION FOR SUMMARY JUDGMENT REGARDING STATUTE OF LIMITATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: March 6, 2017<br>Time: 10:00 a.m.<br>Crtrm.: 5A<br><br>[*Filed concurrently with (1) Statement Of Uncontroverted Facts and Conclusions Of Law; (2) Declaration of William E. Pallares; (3) Declaration of Adam Sokoloff; (4) Declaration of Mike Hessong; (5) Proposed Order*]<br><br>Trial Date: June 13, 2017 |

4817-8971-4241.1

PLEASE TAKE NOTICE that on March 6, 2017 at 10:00 a.m., or as soon thereafter as this motion may be heard in Courtroom 5A of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California 90012, Defendant BIOWORLD MERCHANDISING, INC. ("Bioworld"), by and through its counsel, will and hereby does move for summary judgment as to Plaintiff DANA RUTH LIXENBERG's ("Lixenberg") claims for damages that occurred outside the three-year statute of limitations.

This Motion is brought pursuant to Federal Rule of Civil Procedure 56 on the ground that the statute of limitations precludes Lixenberg from seeking damages for alleged infringement that occurred more than three years prior to filing suit.

The Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities filed concurrently herewith, the Declarations of Adam Sokoloff, Mike Hessong, and William Pallares and all exhibits attached thereto, the accompanying Statement of Uncontroverted Facts and Conclusions of Law, all other matters upon which this Court must or may take judicial notice, and upon all argument that this Court may allow at the time of hearing the Motion.

This motion is made following the conference of counsel for Bioworld and Lixenberg pursuant to L.R. 7-3, which occurred on November 29, 2016.

Respectfully submitted,

DATED: February 6, 2017        LEWIS BRISBOIS BISGAARD & SMITH LLP

By:   /s/ William E. Pallares
William E. Pallares
Attorneys for Defendants BIOWORLD MERCHANDISING, INC., et al.

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

Plaintiff Dana Lixenberg ("Lixenberg") is barred from seeking damages for alleged copyright infringement that occurred outside the three-year statute of limitations. Lixenberg filed suit on September 15, 2015. Thus, Lixenberg may seek damages only for copyright infringement that occurred after September 15, 2012.

Defendant Bioworld Merchandising, Inc. ("Bioworld") anticipates that Lixenberg will contend that she did not discover Bioworld's September 14, 2007, through April 7, 2009, sales of headgear depicting her copyrighted photograph until after the September 15, 2012, cutoff date. At the very least, however, Lixenberg is chargeable with knowledge of Bioworld's 2007 through 2009 sales. The evidence is clear that Lixenberg received a number of storm warnings beginning in November of 2007, and that a reasonably diligent investigation at or around that time would have revealed Bioworld's sales of headgear depicting Lixenberg's copyrighted photograph. On that basis, Bioworld respectfully requests that the Court end litigation of the statute of limitations issue as a matter of law.

## 2. STATEMENT OF FACTS

In this action, Lixenberg alleges that Bioworld is liable for copyright infringement because Bioworld designed and sold merchandise that depicted her copyrighted photographs of Tupac Shakur ("Tupac") and Christopher Wallace ("Notorious B.I.G."). (See First Amended Complaint ("FAC"), Dkt. No. 73, at 7:11-8:10.)

In 1993, Lixenberg photographed Tupac during a photo shoot for Vibe Magazine. (See Excerpts of Deposition of Dana Ruth Lixenberg ("Lixenberg Depo.") at 96:12-97:16 and 104:10-23, attached as Exh. A to the Pallares Decl., ¶ 2; see also, Certificate of Registration for the Tupac Photo attached as Exh. G to the Pallares Decl., ¶ 8.) She published her photograph entitled "Tupac Amaru Shakur-01, Atlanta, 1993" (the "Tupac Photo") on February 1, 1994. *Id.*

1       In 1996, Lixenberg photographed Notorious B.I.G. during a photo shoot for Vibe Magazine. (Lixenberg Depo. at 147:2-150:15 and 150:24-155:21, attached as Exh. A to the Pallares Decl., ¶ 2; see also, Certificate of Registration for "Notorious B.I.G. #1" attached as Exh. D to the Pallares Decl., ¶ 5; see also, Certificate of Registration for "Notorious B.I.G. #5" attached as Exh. E to the Pallares Decl., ¶ 6; see also, Certificate of Registration for "Notorious B.I.G. #2" attached as Exh. F to the Pallares Decl., ¶ 7.) Lixenberg first published her photographs entitled "Notorious B.I.G. #1", "Notorious B.I.G. #5", and "Notorious B.I.G. #2" on September 1, 1996. *Id.*

       In or around November of 2007, Lixenberg had actual knowledge of infringement regarding her "Notorious B.I.G. #1" photograph. (See Uncontroverted Fact ("UF") #1.) Specifically, Lixenberg was informed by her then-assistant that Urban Outfitters, Inc., a clothing store, was selling t-shirts depicting the "Notorious B.I.G. #1" photograph (the "Urban Outfitters Infringement"). (Lixenberg Depo. at 198:7-199:2, attached as Exh. A to the Pallares Decl., ¶ 2.) Lixenberg then personally visited the Urban Outfitters store in New York and saw the infringing t-shirts. (Lixenberg Depo. at 367:18-369:19, attached as Exh. B to the Pallares Decl., ¶ 3.)

       Pursuant to this knowledge, Lixenberg conducted an investigation regarding the infringement of her "Notorious B.I.G. #1" photograph. (UF #2.) Specifically, upon learning of the Urban Outfitters Infringement, Lixenberg instructed her agent, Norma Jean Markus ("Markus"), to prepare and send letters to various parties, such as to Notorious B.I.G.'s estate and Urban Outfitters, to ascertain information about the infringement. (See Excerpts of Deposition of Norma Jean Markus ("Markus Depo.") at 37:22-38:14, 47:12-48:1, attached as Exh. C to the Pallares Decl., ¶ 4.)

       Markus was the only person representing Lixenberg with respect to the investigation of infringement. (Markus Depo. at 80:5-22, attached as Exh. C to the Pallares Decl., ¶ 4.) Markus fully advised Lixenberg of her progress and the status

of the investigation; Lixenberg knew everything Markus knew. *Id.*

As part of the investigation, Markus never visited other physical retail stores in New York to determine if other retailers were selling merchandise which infringed Lixenberg's Notorious B.I.G. and Tupac photographs. (Markus Depo. at 36:10-38:14, attached as Exh. C to the Pallares Decl., ¶ 4.)

Notwithstanding her failure to canvas physical retail stores, Markus did investigate on the internet and learned that other retailers were selling merchandise depicting the "Notorious B.I.G. #1" photograph. (Markus Depo. at 56:25-58:19, attached as Exh. C to the Pallares Decl., ¶ 4.) What is more, Markus learned that online retailers were selling merchandise depicting Lixenberg's *other* Notorious B.IG. photographs and the Tupac Photo. (Markus Depo. at 60:24-62:2, attached as Exh. C to the Pallares Decl., ¶ 4.) Ergo, in 2007, Lixenberg was aware that merchandise depicting her other photographs were for sale. (UF #3.)

Despite learning about additional infringement, both Lixenberg and Markus failed to conduct any further investigation. (UF #4.) In fact, Markus testified that she "never got to the bottom of it" after learning about the additional online retailers. (Markus Depo. at 58:14-18, attached as Exh. C to the Pallares Decl., ¶ 4.) In addition, despite testifying that she is very protective of her work, Lixenberg failed to conduct a simple search on Amazon.com for allegedly infringing merchandise until 2014. (Lixenberg Depo. at 256:12-257:10 and 326:25-327:7, attached as Exhs. A and B to the Pallares Decl., ¶¶ 2, 3.)

At the time Lixenberg and her agent Markus were conducting an investigation, Bioworld was selling headgear depicting the Tupac Photo to various retailers between September 14, 2007, and April 7, 2009 ("Bioworld's Sale of Headgear"). (UF #5.) In addition, in or around 2007 and 2008, various retailers were selling merchandise depicting the Tupac Photo on the internet. (UF #6.)

Lixenberg did not file her Complaint in this action until September 15, 2015, almost eight (8) years after receiving her first storm warning. (UF #7.)

## 3. MOTION FOR SUMMARY JUDGMENT STANDARD

### A. General Standard

A motion for summary judgment shall be granted if all the papers submitted show that there is no genuine triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law with respect to a "claim or defense" or any "part" of a claim or defense. Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party meets this initial burden, the nonmoving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

### B. Burden Regarding Statute of Limitations

"Because the statute of limitations is an affirmative defense, defendants bear the initial burden on a motion for summary judgment of demonstrating that plaintiffs' claims are time barred." *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1091 (C.D. Cal. 2016).

"If defendants meet their burden, the burden then shifts to plaintiffs as the non-moving party to establish that there is sufficient evidence in the record from which a reasonable trier of fact could conclude that plaintiffs' claims are not time barred." *Id*. at 1091-92.

"If defendants establish that plaintiffs' claims are time barred absent application of an equitable exception, plaintiffs bear the burden of demonstrating the applicability of any such exception, including the delayed discovery rule." *Id*. at 1092; see *O'Connor v. Boeing N. Am.*, 311 F.3d 1139, 1150 (9th Cir. 2002) ("Because Plaintiffs have the burden of proof at trial to establish that they are entitled to the benefit of the discovery rule, to defeat summary judgment they [are] required to come forward with evidence establishing a triable issue of fact with regard to whether the discovery rule applies.").

### 4. LIXENBERG IS BARRED FROM SEEKING DAMAGES FOR ALLEGED COPYRIGHT INFRINGMENT THAT OCCURRED OUTSIDE THE THREE-YEAR STATUTE OF LIMITATIONS

#### A. Lixenberg May Seek Damages Only for Copyright Infringement that Occurred After September 15, 2012.

Generally, an action for copyright infringement may be brought only for "acts that accrued within the three years preceding the filing of suit." *Polar Bear Prods. v. Timex Corp.,* 384 F.3d 700, 706 (9th Cir. 2004) (quoting *Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir. 2004)); 17 U.S.C. § 507(b). A claim accrues at the moment "when the copyright holder 'has knowledge of a violation *or is chargeable with such knowledge*.'" *Wolf*, *supra*, 167 F. Supp. 3d at 1092 (quoting *Polar Bear Prods.*, *supra*, 384 F.3d at 706). Each act of infringement is a "distinct harm giving rise to an independent claim for relief." *William A. Graham Co. v. Haughey*, 484 F.Supp.2d 324, 328 (E.D.Pa. 2007) (quoting *Stone v. Williams*, 970 F.2d 1043, 1050 (2d Cir. 1992)); *Roley*, *supra*, 19 F.3d at 481.

To recover damages occurring outside of the three-year window, the copyright holder must establish that it "did not discover—*and reasonably could not have discovered*—the infringement before the commencement of the three-year limitation period." *Wolf*, *supra*, 167 F. Supp. 3d at 1093 (quoting *Polar Bear Prods.*, *supra*, 384 F.3d at 706).

Bioworld maintains that, based on the facts outlined above, Lixenberg is precluded as a matter of law from seeking damages for Bioworld's sale of headgear between September 14, 2007, and April 7, 2009.

### B. Around the Time Lixenberg Became Aware of the Urban Outfitters Infringement in 2007, Lixenberg Knew (or at the Very Least is Chargeable with Knowing) that Bioworld was Selling Headgear Depicting the Tupac Photo.

Lixenberg waited to file her Complaint in this Action until September 15, 2015. (UF #7.) Lixenberg is thus barred from seeking damages for alleged copyright infringement that occurred prior to September 15, 2012.

Bioworld anticipates that, in opposition, Lixenberg will contend that she did not discover Bioworld's Sale of Headgear until after the September 15, 2012, cutoff date. At the very least, however, Lixenberg is chargeable with that knowledge. Indeed, she cannot come forward with any evidence establishing a triable issue of fact as to her being charged with knowledge of Bioworld's Sale of Headgear. The undisputed facts make clear that Lixenberg had constructive knowledge.

"When a plaintiff is aware of facts that furnish it with a potential claim, a duty of inquiry arises and plaintiff is charged with whatever knowledge an inquiry would have revealed." *William A. Graham Co. v. Haughey*, 484 F.Supp.2d 324, 328 (E.D.Pa. 2007). This is true "irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Merck & Co. v. Reynolds*, 559 U.S. 633, 634 (2010) (emphasis added).

Beginning in or around November of 2007, Lixenberg received storm warnings of copyright infringement of her photographs of hip-hop stars. First, she had actual knowledge of infringement regarding her "Notorious B.I.G. #1" photograph – the Urban Outfitters Infringement. (UF #1.) In fact, Lixenberg personally visited the Urban Outfitters store in New York and saw the infringing t-shirts. (Lixenberg Depo. at 367:18-369:19, attached as Exh. B to the Pallares Decl.,

¶ 3.)

Next, on behalf of Lixenberg, Markus investigated on the internet and learned that <u>other</u> retailers were selling merchandise depicting the "Notorious B.I.G. #1" photograph. (Markus Depo. at 56:25-58:19, attached as Exh. C to the Pallares Decl., ¶ 4.) What is more, Markus learned that online retailers were selling merchandise depicting Lixenberg's <u>other</u> Notorious B.IG. photographs, *as well as the Tupac Photo*. (Markus Depo. at 60:24-62:2, attached as Exh. C to the Pallares Decl., ¶ 4.)

Markus fully advised Lixenberg of her progress and the status of the investigation. (Markus Depo. at 80:5-22, attached as Exh. C to the Pallares Decl., ¶ 4.) Indeed, Lixenberg knew everything Markus knew. *Id*. In addition, as Markus' principal, Lixenberg is imputed with Markus' knowledge as a matter of law. *Columbia Pictures Corp. v. De Toth*, 87 Cal. App. 2d 620, 630 (1948).

Ergo, not only did Lixenberg have actual knowledge that her "Notorious B.I.G. #1" photograph was being depicted on merchandise, she was also aware that her other photographs were being used on apparel. (UF #3.) Despite learning about additional infringement, however, both Lixenberg and Markus failed to conduct any further investigation. (UF #4.) For example, Markus testified that she "never got to the bottom of it" after learning about the additional online retailers. (Markus Depo. at 58:14-18, attached as Exh. C to the Pallares Decl., ¶ 4); *Young v. Lepone*, 305 F.3d 1, 9 (1st Cir. 2002) (even though "a reasonably diligent investigation following the receipt of storm warnings may consume … as much as a few years to get to the bottom of the matter"). In addition, despite testifying that she is very protective of her work, Lixenberg failed to conduct a simple search on Amazon.com for allegedly infringing merchandise until 2014. (Lixenberg Depo. at 256:12-257:10 and 326:25-327:7, attached as Exhs. A and B to the Pallares Decl., ¶¶ 2, 3.)

Lixenberg's failure to conduct a thorough and diligent investigation is no excuse, as she is charged "with whatever knowledge an inquiry would have

revealed" (*William A. Graham Co.*, supra, 484 F.Supp.2d at 328), "irrespective of whether [she] undertook a reasonably diligent investigation." *Merck & Co.*, supra, 559 U.S. at 634.

Before Lixenberg received her first storm warning, Bioworld was already selling headgear depicting the Tupac Photo to various retailers beginning September 14, 2007. (UF #5.) In addition, consistent with Markus' testimony that she is "sure" she came across Tupac photographs on apparel during her internet search at that time (Markus Depo. at 61:23-62:2, attached as Exh. C to the Pallares Decl., ¶ 4), various retailers were selling merchandise depicting the Tupac Photo on the internet in or around 2007 and 2008. (UF #6.)

Thus, even assuming Lixenberg did not have actual knowledge of Bioworld's Headgear Sale, she had a duty of inquiry after receiving the aforementioned storm warnings. And a reasonably diligent investigation would have apprised Lixenberg of the fact that her Tupac Photo was being used on merchandise sold by Bioworld. Indeed, Lixenberg's photographs are of a "distinctive" nature and should have been easy to identify on online retailers' websites. (Markus Depo. at 24:25-25:12, attached as Exh. C to the Pallares Decl., ¶ 4).

Accordingly, Lixenberg is barred by the statute of limitations from seeking damages for alleged copyright infringement – including Bioworld's Headgear Sale – which occurred outside the three-year statute of limitations – that is, before September 15, 2012.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## 5. CONCLUSION

For the foregoing reasons, Bioworld respectfully requests that this Court grant this Motion for Summary Judgment.

                                         Respectfully submitted,

DATED: February 6, 2017      LEWIS BRISBOIS BISGAARD & SMITH LLP

By:    /s/ William E. Pallares
William E. Pallares
Attorneys for Defendants BIOWORLD MERCHANDISING, INC., et al.

# CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2017, I electronically transmitted the foregoing attached document to the Clerk's office using the Court's CM/ECF System:

Stephen M. Doniger, Esq.
Scott Alan Burroughs, Esq.
Justin M. Gomes, Esq.
DONIGER/BURROUGHS
603 Rose Avenue
Venice, CA 90291

*Attorney for Plaintiff*

Telephone:  310.590.1820
Email:  Stephen@donigerlawfirm.com
Email:  scott@donigerlawfirm.com
Email:  jgomes@donigerlawfirm.com

Robert G. Lancaster
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

*Attorneys for Defendant*
WAL-MART STORES, INC

Telephone: 310.576.2100
Fax:  310.576.2200
Email:  rglancaster@bryancave.com

/s/ *William E. Pallares (ct187740)*
William E. Pallares