Stephen M. Doniger (SBN 179314)
stephen@donigerlawfirm.com
Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Trevor W. Barrett (SBN 287174)
tbarrett@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice, California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA RUTH LIXENBERG,<br><br>Plaintiff,<br><br>v.<br><br>BIOWORLD MERCHANDISING, INC.; et al.<br><br>Defendants. | Case No.:  2:15-cv-07242-MWF-MRW<br>_Hon. Michael W. Fitzgerald Presiding_<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION**<br><br>**[Declarations of Dana Ruth Lixenberg Scott Alan Burroughs, Aernoud Bourdrez, and Norma Jean Markus; Statement of Uncontroverted Facts and Law; and [Proposed] Order Filed Concurrently Herewith]**<br><br>Date: March 6, 2017<br>Time: 10:00 a.m.<br>Courtroom: First Street Courthouse, 350 West First Street, Courtroom 5A, Los Angeles, California 90012<br><br>Discovery Cut-Off: February 6, 2017<br>Final Pre-Trial Conf.: May 22, 2017<br>Trial: June 13, 2017 |

i

*TO THE HONORABLE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:*

PLEASE TAKE NOTICE THAT on March 6, 2017 at 10:00 a.m. in Courtroom 5A of the courthouse located at 350 West First Street, Los Angeles, California 90012, Plaintiff, Dana Ruth Lixenberg, will and hereby does move, pursuant to Fed. R. Civ. P. §56, for summary adjudication of the issues of liability for copyright infringement, willfulness, and damages as to Defendants Bioworld Merchandising, Inc. ("Bioworld"), as well as Citi Trends, Inc., Rue21, Inc., Spencer's Gifts, LLC, Specialty Retailers, Inc., Thrillist Media Group, Inc., Macy's Retail Holdings, Inc., Forever 21, Inc., Hot Topic, Inc., Target Corporation, Genesco, Inc., Wal-Mart Stores, Inc. ("Walmart"), Burlington Coat Factory Direct Corp., Ross Stores, Inc., Sears Holding Corp., Shopko Stores Operating Co., LLC, The TJX Companies, Inc., Urban Outfitters, Inc. ("Urban Outfitters"), J.C. Penney Corporation, Inc., and Gordmans Stores, Inc. (all Defendants referenced herein other than Bioworld will be referred to collectively as the "Retailer Defendants"). In sum, Lixenberg moves for summary adjudication of issues as to all above-named Defendants.

This motion is made on the grounds that there are no triable issues of fact as to: (1) Lixenberg's ownership of the photographs at issue; (2) Defendants' unauthorized copying and exploitation of Lixenberg's photographs, including without limitation, their respective distribution and sale of product bearing said photographs; (3) the willfulness of Bioworld and certain of the Retailer Defendants; (4) the inapplicability of certain affirmative defenses, including without limitation, apportionment, license, and statute of limitations; and (5) Defendants' revenues as derived from the infringement.

This motion is based on the attached Memorandum of Points and Authorities, the Statement of Uncontroverted Facts, the Declarations filed herewith, the papers and evidence on file in this case, and such evidence and argument as may be received at

on reply and at hearing. This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on November 30, 2016 and February 3, 2017. Declaration of Scott Alan Burroughs ("Burroughs Decl.") ¶1. No resolution could be reached, necessitating this motion.

Respectfully submitted,

Dated:  February 6, 2017        By:        _/s/ Scott Alan Burroughs_
                                           Scott Alan Burroughs, Esq.
                                           Justin M. Gomes, Esq.
                                           DONIGER / BURROUGHS
                                           Attorneys for Plaintiff
                                           DANA RUTH LIXENBERG

## **TABLE OF CONTENTS**

I.    STATEMENT OF FACTS………………………………………………1

II.   LEGAL BRIEF……………………………………..................………..6

    A. Lixenberg meets the summary judgment standard………………….……..6

    B. Bioworld infringed Lixenberg's rights in the Subject Photographs………...7

          1.   The Subject Photographs are original and owned by Lixenberg….7

          2.   Bioworld copied the Subject Artwork and Defendants distributed the Infringing Product………………………………..…8

               a.   Bioworld had an opportunity to access the Subject Photographs……………………………………...…9

                       i.   The photographs are "strikingly similar"…………..10

                       ii.   The Subject Photographs were widely disseminated…………………………………….10

                       iii.   The chain of events or should be presumed………..11

               b.   The photographs are at least substantially similar……….11

                         i.   Lixenberg satisfies the extrinsic test……………….12

                         ii.   Lixenberg also satisfies the intrinsic test…………..12

          3.   The Infringing Products are at least unlawful derivative works…………………………………………………………13

    C.   Bioworld and certain Retail Defendants' infringement was willful……13

          1.   Bioworld willfully infringed……………………………..14

          2.   The Retail Defendants willfully infringed……………..15

    D.   The affirmative defense of apportionment is precluded………………16

          1.   Willfulness precludes the application of apportionment……..…16

          2.   Apportionment is precluded where infringer did not have the right to use the material for which apportionment is sought…….18

          3.   Bioworld concealed the identity of its designers and spoliated records, which should preclude any defense predicated on Genovez or Parker's use of the Shakur or Wallace likenesses…..19

          4.   Bioworld concedes that there is no proper basis for apportionment………………………………………….21

          5.   Apportionment cannot exceed the amount paid by Bioworld…...22

    E.   The license defense fails…………………………………….22

    F.   The statute of limitations defense fails………………………….22

    G.   Defendant revenues from sales of the Infringing Product are set……...23

    H.   Lixenberg is entitled to costs of proof…………………………24

III.   THIS MOTION SHOULD BE GRANTED…………………………...25

iv

## TABLE OF AUTHORITIES

*ABKCO Music, Inc. v. Harrisongs Music, Ltd*., 508 F.Supp. 798, 801 n.10 (S.D.N.Y.1981)………………………………………………………………16

*Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir.2000)…………………18

*Alexander v. Nat'l Farmers Org*., 687 F.2d 1173, 1205 (8th Cir.1982)……………...20

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)…………………………………………………………………………7

*Atari Games Corp. v. Nintendo of America, Inc*., 975 F.2d 832, 846 (Fed.Cir.1992)..17

*Baxter v. MCA, Inc*., 812 F.2d 421, 423 (9th Cir.1987)……………………….........10

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg*., 2012 WL 6553403, at *2 (S.D. Cal. Dec. 13, 2012)……………………………………………………………8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)…………………………………...7

*Cream Records, Inc. v. Jos. Schlitz Brewing Co*., 754 F.2d 826, 829 (9th Cir. 1985)………………………………………………………………………21

*Danjaq LLC v. Sony Corp*., 263 F.3d 942, 957 (9th Cir. 2001)………………...17

*Data Gen. Corp. v. Grumman Sys. Support Corp*.,
   36 F.3d 1147, 1176 (1st Cir. 1994)……………………………………17

*DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th Cir. 2015)……………………13

*Dolman v. Agee,* 157 F.3d 708, 714 (9th Cir. 1998)........................................15

*Ets–Hokin v. Skyy Spirits, Inc*., 225 F.3d 1068, 1076 (9th Cir.2000)…………………8

*Feist Publications. Inc. v. Rural Tel. Serv. Co., Inc*., 499 U.S. 340, 345 (1991) ……..8

*Fodor v. Los Angeles Unified Sch. Dist*., 2014 WL 12235424, at *16 (C.D. Cal. June 3, 2014)…………………………………………………………………13

*Friedman v. Live Nation Merchandise, Inc*., 2016 WL 4394585, at *8 (9th Cir. Aug. 18, 2016)…………………………………………………………………11

*Guzman v. Bridgepoint Educ., Inc*., 305 F.R.D. 594, 605 (S.D. Cal. 2015)…………20

*Henry v. Gill Indus., Inc*., 983 F.2d 943, 947 (9th Cir.1993)………………………...19

*Hermes Int'l v. Lederer de Paris Fifth Ave., Inc*., 219 F.3d 104, 107 (2d Cir.2000)...17

*Hill v. U.S. Dep't of Homeland Sec*., 570 F. App'x 667, 669 (9th Cir. 2014)……….19

*Holmgren v. State Farm Mutual Automobile Insurance Company*,
   976 F.2d 573, 579–81 (9th Cir.1992)……………………………… ………………24

*Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 841 (9th Cir. 2002)…..17

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.),* 71 F. 3d 996 (2nd Cir. 1995)……………..16

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,* 345 F.3d 1140, 1144 (9th Cir. 2003)……………………………………………………………………..…8

*L.A. Printex Indus., Inc. v. Aeropostale, Inc*., 676 F.3d 841, 853 (9th Cir. 2012)…….9

*L.A. Printex Indus., Inc. v. Lia Lee, Inc*., 2009 WL 789877, at *7 (C.D. Cal. Mar. 23, 2009)………………………………………………………………………15

*Leon v. IDX Sys. Corp*., 464 F.3d 951, 959 (9th Cir. 2006)…………………………20

*Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984)…………………………13

v

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992)…………………8

*Marchland v. Mercy Medical Center*, 22 F.3d 933, 936 (9th Cir.1994)……………..24

*Milgram Food Stores, Inc. v. United States*, 558 F.Supp. 629, 636 (W.D.Mo.1983)..25

*Orgel v. Clark Boardman Co*., 301 F.2d 119, 121 (2d Cir.1962)……………………21

*Peer Int'l Corp. v. Pausa Records, Inc*., 909 F.2d 1332, 1336 (9th Cir. 1990)………14

*Polar Bear Productions, Inc. v. Timex Corp*., 384 F.3d 700, 706 (9th Cir. 2004)……23

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co*., 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)…………………………………………………………17

*Range Road Music, Inc. v. East Coast Foods, Inc*., 668 F.3d 1148, 1154 (9th Cir. 2012)…………………………………………………………………………………..9

*Reed Elsevier, Inc. v. Muchnick*,

  559 U.S. 154, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010)……………………...17

*Sheldon v. Metro-Goldwyn Pictures Corp*., 309 U.S. 390, 406, 60 S.Ct. 681, 687, 84 L.Ed. 825 (1940)……………………………………………………………17, 21

*Smith v. Little, Brown & Co*., 273 F.Supp. 870, 874 (S.D.N.Y.1967), aff'd, 396 F.2d 150 (2d Cir.1968)…………………………………………………………………16

*S.O.S., Inc. v. Payday, Inc*., 886 F.2d 1081, 1088 (9th Cir. 1989)…………………...22

*Stratchborneo v. Arc Music Corp*., 357 F.Supp. 1393, 1403 (S.D.N.Y.1973)……….10

*Tarin v. County of Los Angeles*, 123 F. 3d 1259, 1263 (9th Cir. 1997)………………7

*Testa v. Janssen*, 492 F. Supp. 198, 203 (W.D.Pa.1980)……………………………10

*Thomas v. Old Town Dental Grp., P.A.,* 300 F.R.D. 585, 589 (S.D.Fla.2014)………20

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000)………………7

*Twentieth Century- Fox Film Corp. v. MCA, Inc.,* 715 F.2d 1327, 1330 (9th Cir. 1983)………………………………………………………………………………12

*UMG Recordings Inc. v. Global Eagle Entertainment, Inc.*, 2016 WL 345179 (C.D.Cal. Apr. 20, 2016)……………………………………………………….23

*Universal Pictures Co., Inc. v. Harold Lloyd Corp*., 162 F.2d 354, 360 (9th Cir. 1947)………………………………………………………………………………11

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012)………………………………………………………………………………13

*Washington State Physicians Insurance Exch. and Ass'n v. Fisons Corp*., 122 Wash.2d 299, 858 P.2d 1054, 1084 (1993)…………………………………………25

*Worldwide Church of God v. Philadelphia Church of God, Inc*., 227 F.3d 1110, 1114 (9th Cir. 2000)……………………………………………………………………22

Statutes

17 U.S.C. § 101……………………………………………………………………13

17 U.S.C. § 106…………………………………………………………....9, 12, 13

17 U.S.C. § 106(2)…………………………………………………………………12

17 U.S.C. § 410(c)………………………………………………………………..8

17 U.S.C. § 504(b) ………………………………………………………………..23

## MEMORANDUM OF POINTS AND AUTHORITIES

The Court should adjudicate the issues of copyright infringement, willfulness, and damages in favor of the Plaintiff, Dana Ruth Lixenberg, as set forth below:

## I.   STATEMENT OF FACTS

In the mid-1990s, a vicious campaign of violence that was later to be coined the "Hip Hop Wars" was raging on both coasts. As part of this conflagration, two popular gangster rappers – Tupac Shakur and Christopher "Notorious B.I.G." Wallace – were gunned down by unknown assailants in crimes that remain unsolved to this day.

Lixenberg, an acclaimed photographer,[1] is one of few, if not the only, artist to have created compelling professional photographs with these rappers as subjects. Four of Lixenberg's original works – three of Wallace and one of Shakur – were unlawfully copied by Bioworld Merchandising, Inc. ("Bioworld") and are at issue in this case ("Subject Photographs"). Lixenberg Decl.¶1; Exs.1-4.

Ms. Lixenberg created the Shakur photograph at issue in 1993 ("Shakur Photograph").  Lixenberg Decl. ¶3; Ex. 4. Working with Vibe magazine, a then-upstart national publication that covered hip hop in a way once reserved for more established genres, she independently created[2] the Shakur Photograph in Atlanta. Burroughs Decl. ¶2, Ex. 8, Light Deposition ("Light Dep."), pgs. 113:25-114:12; Lixenberg Decl. ¶3.

Vibe found Lixenberg's work remarkable and engaged her to photograph a

---

[1] Lixenberg received much critical acclaim for her earlier work, such as her striking *Imperial Courts* portfolio. Lixenberg Decl. ¶2. She created this work by embedding with the eponymous Watts housing project and photographing the community with reverence and resonance. Id.

[2] In creating the Subject Photographs, Lixenberg made many artistic decisions, including the selection of the Wista Black Metal 4x5 Field Camera and 150mm Schneider lens used, the composition, angling, and positioning of the camera, the focal length, exposure decision, selection and positioning of the subject, the choice of background, lighting, shading, choice of negative area, the instant of exposure, the portrayal of emotional aesthetics, and rendition of the work. Id. at ¶4.

number of other personalities such as Prince, Curtis Mayfield, and Al Green, as well as a rotund former crack-dealer turned gangster rapper named Christopher "Notorious B.I.G." Wallace. Lixenberg Decl. ¶5; Exs. 1-3. In 1996, Lixenberg created three particularly compelling photographs that featured Wallace as the subject. ("Wallace Photographs"). Id. at ¶6; Exs. 1-3.

A short time later, both of the rappers in the Subject Photographs were gone. Shakur was shot and killed in Las Vegas on September 13, 1996, and Wallace was shot and killed in Los Angeles on March 9, 1997.

The Subject Photographs are particularly resonant images. The Shakur Photograph was not only published by Vibe in its magazine, but also on it posthumous biography of Shakur, where it was displayed unblemished by any text. Ex. 8, Light Dep. pgs. 113:16-114:2; Ex. 39. It has gone on to be used in other publications and projects and has become iconic. Id.; Lixenberg Decl. ¶7. The Wallace Photographs were also well-received. One of the Wallace Photographs, in which he is seen thumbing through a thick wad of rubber band-bound currency, became iconic after being published in Vibe and other publications (known now as the "counting-money" photograph). Lixenberg Decl. ¶6; Ex. 39. The two other Wallace Photographs were licensed for editorial use through Corbis, a photography agency, and also enjoyed acclaim in the art world and online at sites like www.mtv.com and www.huffingtonpost.com. Id. at ¶7; Ex. 39.

Lixenberg independently created the Subject Photographs. Id. at ¶1. She exclusively owns all rights in and to the Subject Photographs and has registered them with the Copyright Office. Lixenberg Decl. ¶1, 8; Ex. 5. In late 2014, Lixenberg discovered that shirts and other products bearing the Subject Photographs were being sold by mass-market retailers ("Infringing Product").[3] Lixenberg Decl. ¶9. Bioworld, a

---

[3]The defendant retailers that sold Infringing Product and are presently in this lawsuit are Citi Trends, Inc., Rue21, Inc., Spencer's Gifts, LLC, Specialty Retailers, Inc., Thrillist Media Group, Inc., Macy's Retail Holdings, Inc., Forever 21, Inc., Hot Topic,

Texas garment company, was responsible for manufacturing said product and selling it to Retailer Defendants for sale to the public. Id. No Defendant at any time contacted Lixenberg to seek authorization to exploit the four Subject Photographs. Id.

Lixenberg served cease and desist demand letters on Forever 21, Inc. and Macys, Inc., both of which were Bioworld customers for the Infringing Product. Bourdrez Decl. ¶1-2; Ex. 6, 34. At least one these letters was forwarded by the retailer to Bioworld in April 2015. Bourdrez Decl. ¶1. Yet Bioworld failed contact its numerous other customers for the Infringing Product to advise them of the claims, and continued to sell the Infringing Product until March 2016. Burroughs Decl. ¶4, Ex. 19.

Lixenberg never authorized Bioworld to exploit the Subject Photographs. Lixenberg Decl. ¶1. The Shakur estate never authorized *anyone* to use the Shakur Subject Photograph on any merchandise,[4] and Bioworld was not authorized to copy the Wallace Subject Photographs from the internet or from another company's infringing garment for use on product. Burroughs Decl. ¶¶5-6, Exs. 9-10, Monjauze Dep. pgs. 182:25-183:17, Sokoloff Dep. II pgs. 21:12-23:20; Lixenberg Decl. ¶10. To the contrary, Bioworld's rights to exploit the Shakur and Wallace likenesses on product were strictly circumscribed by the libraries of photographs provided by estates for such use. Exs. 11, 12. These libraries did not include the Subject Photographs. Id.

Bioworld's designer, Alex Genovez, unsatisfied with the authorized photograph libraries, went online and illegally downloaded the four Subject Photographs from the Tumblr website.[5] Burroughs Decl. ¶¶8, 10; Ex. 41, pgs. 15:1-7; 17:1-6, 18:8-12;

---

Inc., Target Corporation, Genesco, Inc., Wal-Mart Stores, Inc., Burlington Coat Factory Direct Corp., Ross Stores, Inc., Sears Holding Corp., Shopko Stores Operating Co., LLC, The TJX Companies, Inc., Urban Outfitters, Inc., J.C. Penney Corporation, Inc., and Gordmans Stores, Inc. (collectively "Retailer Defendants").
[4] Molly Monjauze, of the Shakur estate testified that it "never sent this photo anywhere to anyone with the understanding that it was approved and licensed properly for any use at all ever." See Ex. 9.
[5] This website was not authorized by Lixenberg to display the Subject Photographs. Lixenberg Decl. ¶10.

19:24-20:4. Bioworld designer Winston Parker made a *second* unauthorized copy of the "counting money" Wallace Photograph by scanning it from a garment produced by a company called Changes and sold by Urban Outfitters in 2007. Ex. 10, Sokoloff Dep. II pgs. 21:12-23:20. This garment was the subject of a copyright claim by Lixenberg that was resolved in 2008, with Changes and Urban agreeing to no longer sell the item. Lixenberg Decl. ¶11, Ex. 7; Markus Decl. ¶¶2-6; Ex. 7.

Incredibly, approximately 3-4 years after this agreement, Urban Outfitters employee Mike Tkach met with Parker and the two worked together to duplicate the infringing garment. Ex. 10, Sokoloff Dep. II, pgs. 21:12-23:20. After scanning the Changes garment, Bioworld used its design editing program to copy the Lixenberg photograph on the garment, and exploited that copy along with the downloaded copy.

Bioworld engaged in egregious discovery misconduct to conceal this misconduct. In February 2016 Lixenberg requested that Bioworld disclose the identities of those responsible for obtaining the Subject Photographs: her Interrogatories No. 7 and 8 sought the "the identity of the PERSON(s) *that provided the images to YOU*" (No. 7), and requested that Bioworld "IDENTIFY *all witnesses with knowledge or information concerning YOUR obtainment or creation of the ACCUSED IMAGES* and/or purchase, distribution, or sale of SUBJECT MERCHANDISE" (No. 8)(emphasis added). Receiving no proper response, Lixenberg filed her *first* Bioworld discovery motion on June 13, 2016. See U.S.D.C. *Dkt.* No 103, pgs. 58-69. After oral argument, the Court ordered the parties to confer and file a joint report regarding the agreement reached. The parties filed a report indicating the above interrogatories would be fully supplemented by August 9, 2016. See U.S.D.C. Dkt. No.154 ("Bioworld agreed to provide full supplemental responses to Interrogatories 1, 3, 7, and 8[.]"). Despite the agreement, Bioworld failed to disclose Genovez or Parker until the second session of its deposition in late November 2016, at which time Bioworld also admitted that it "trashed" Genovez's computer and files at an unknown time for an unknown reason, and that it terminated Genovez in

October of 2016, the month **before** his disclosure. Ex. 10, Sokoloff Dep. II at, 59:10-17; 67:11-20; 56:1-5, 11-13.

As justification for the concealment of Genovez (but not Parker), Bioworld represented to the Court at a subsequent hearing that it had communicated with Genovez in February of 2016 and December of 2016, and found him not competent to testify. Bioworld represented that it "did not disclose Genovez because, based on the information available to it, Mr. Genovez lacks knowledge as to the matters at issue as a result of his brain injury." See U.S.D.C. Dkt No. 173, 15:12-14. Bioworld counsel William Pallares, was unequivocal, expressly stating that he spoke with Genovez and concluded that Genovez had no recall of the relevant activity, and was not competent to testify. Burroughs Decl. ¶¶10. No relevant medical records in support of incompetency have been adduced. Id.

No such records exist because Bioword's justification was a **sham**. Genovez's (court-ordered) deposition was held on February 2, 2017, and he recalled with little difficulty which of the products he created in a 27-page summary of Infringing Product (Ex. 41 pg. 8-14, *passim;* Ex. 30), which were created by his colleague (Ex 41, pg. 9:8-10), and the website from which he downloaded the four Subject Photographs (Id., pgs. 15:1-7; 17:1-6, 18:8-12; 19:24-20:4).[6] Id. at ¶ 8, 11; Burroughs Decl. ¶10; Ex. 41. He recalled communicating with his colleague Adam Sokoloff (Ex. 41, pg. 21:10-14), recalled particularly liking the way the Subject Photographs looked (Id., *passim*), and recalled that Bioworld had no policy precluding him from downloading photographs from the internet for use on Bioworld product (Id. pg. 21:22-22:2). His memory of the relevant activity was more than competent, especially given the acts discussed took place in 2012. Id.

One thing he did *not* recall was ever speaking with a lawyer named Bill

---

[6] Tellingly, after attending every other deposition in this case (and there have been many), Pallares had partner, Joseph Campo to attend this deposition. Campo had not attended any of the previous depositions in this case.

Pallares, though he did recall speaking with a lawyer.[7] Id., pgs. 27:2-13; 24:6-8; 24:18-21. This belied Pallares' statement to the Court that the reason that Genovez was not identified earlier was due to Bioworld's understanding – as of February 2016 – that Genovez wasn't competent to testify. Indeed, Genovez testified that he did not discuss this matter with **anyone** before December of 2016 and couldn't recall telling anyone he wasn't competent to testify. Id., pgs. 23:16-24; 24:18-21. Not only was Genovez competent, but it is unclear how Bioworld could **possibly** conclude, as was represented to the Court, that he was unable to testify.

Genovez's damaging testimony proved motive: he rebutted Bioworld's sworn discovery responses and previous testimony asserting that Bioworld downloaded *only two* of the four Subject Photographs, and that the Shakur estate was responsible for providing to Bioworld the Shakur Photograph. Burroughs Decl. ¶12 Ex. 13.

After copying the Subject Photographs onto the Infringing Garments, Bioworld sold the Infringing Product to the Retailer Defendants, and the Retailer Defendants sold the Infringing Product to the public. Burroughs Decl. ¶13; Exs. 14-20. Bioworld admitted that it realized at least $4,431,807.68 in revenues from the sales of the Infringing Product (Exs. 14-15,19), and the Retailer Defendants realized an aggregate of at least $8,342,894.60 in revenues from their respective sales of that product (Exs. 16-18,20). Id. And these revenues are a result of willful infringement by Bioworld and certain retailers, each of which continued to sell Infringing Product after notice. Id. at ¶¶14-21 Exs. 19-29, Lixenberg Decl. ¶9, Ex. 6; Bourdrez Decl. ¶1-2; Exs. 6, 34.

## II.   LEGAL BRIEF

### A.   Lixenberg meets the summary judgment standard.

Summary judgment should be granted if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact. Fed. R. Civ. P. §56(c); *Tarin v. County of Los Angeles*, 123 F. 3d 1259,

---

[7] Plaintiff's counsel and Genovez spoke in December 2016.  Burroughs Decl. ¶11.

1263 (9th Cir. 1997). The moving party must shift the burden by presenting evidence
to establish the absence of any issues of material fact, and the non-moving party must
provide specific facts that create a material issue. *Celotex Corp. v. Catrett*, 477 U.S.
317 (1986). A mere scintilla of evidence is insufficient; "there must be evidence on
which the jury could reasonably find for the [non-movant]." *Id*. (quoting *Anderson v.
Liberty Lobby, Inc*., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Entry
of summary judgment is appropriate "against a party who fails to make a showing
sufficient to establish the existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106
S.Ct. 2548. No genuine issue of material fact exists as to Lixenberg's ownership of all
rights in the Subject Photographs or Defendants' violation of those rights.

### B.   Bioworld infringed Lixenberg's rights in the Subject Photographs.

Lixenberg has the exclusive right to "reproduce, distribute, and publicly
display" the Subject Photographs. 17 U.S.C. § 106. To succeed on her copyright
infringement claims, Lixenberg need only establish (1) ownership of the Subject
Photographs; and (2) infringement—that the Infringing Product bears copies of the
Subject Photographs. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir.
2000 (citation omitted). Lixenberg establishes copying by showing that Defendants
had an opportunity to "access" the Subject Photographs and that the Subject
Photographs and the Infringing Photographs are "substantially similar." Id. Here,
Lixenberg owns the Subject Photographs and Defendants created and distributed
product bearing unauthorized copies of the Subject Photographs.

### 1.   The Subject Photographs are original and owned by Lixenberg.

Lixenberg's ownership of a valid copyright in the Subject Photographs and their
registration with the Copyright Office is beyond reasonable dispute. Lixenberg Decl.
¶¶ 1, 8, Exs. 1-4, 5, 8. The uncontroverted evidence is that Lixenberg produced,
composed, and physically created the Subject Photographs. This element is met.

And there can be no reasonable dispute that the Subject Photographs are

original creative works protected by the Copyright Act. Id. "Even a slight amount" of originality is sufficient to meet this threshold. *Feist Publications. Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991). The Subject Photographs easily meet this low standard of originality. Indeed, "almost any[ ] photograph" will qualify "merely by virtue of the photographers' personal choice of subject matter, angle of photograph, lighting, and determination of the precise time when the photograph is to be taken." *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992)(citation omitted);[8] see also *Morris v. Guetta*, 2013 WL 440127 at *3 (C.D. Cal. Feb. 4, 2013)("even the slightest artistic touch" meets the originality test for a photograph.), *quoting Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir.2000).Lixenberg's testimony, the testimony of Vibe magazine's editor, and the Subject Photographs themselves make clear the test is met.[9]

### 2. Bioworld copied the Subject Artwork and Defendants distributed the Infringing Product.

Summary adjudication is also appropriate on the second element of Lixenberg's claim – that copying has occurred. There can be no reasonable dispute that the Infringing Garments bear unauthorized copies of the Subject Photographs. It is also clear that Bioworld and the Retailer Defendants sold and distributed product that bore

---

[8] *Tullo* also states that courts "have carefully delineated selection of subject, posture, background, lighting, and perhaps even perspective alone as protectable elements of a photographer's work." Id. (citations omitted).

[9] And, under 17 U.S.C. §410(c), Lixenberg's copyright registrations for the Subject Photographs creates a presumption that the works are sufficiently original and owned by Plaintiff. *Lamps Plus, Inc. v. Seattle Lighting Fixture Co*., 345 F.3d 1140, 1144 (9th Cir. 2003). While the presumption is automatic for works registered within five years of their publication, it is within the court's discretion when the registration is effected beyond five years.17 U.S.C. § 410(c)(evidentiary weight "shall be within the discretion of the court."). "Most courts conclude that untimely certificates constitute prima facie evidence[,]" especially when "the only flaw is the passage of time[.]") *Brighton Collectibles, Inc. v. RK Texas Leather Mfg*., 2012 WL 6553403, at *2 (S.D. Cal. Dec. 13, 2012) (citations omitted). The presumption should apply here.

unlawful copies of the Subject Photographs. 17 U.S.C. § 106. Copying is proven by showing that: (1) the Defendants had a reasonable opportunity to view or access the copyrighted material; and (2) the defendant's work and plaintiff's work are substantially similar. *Three Boys Music Corp.*, 212 F.3d at 486. Lixenberg satisfies both of these prongs. The similarities between the Subject Photographs and photographs on the Infringing Products are so striking that copying is the only plausible explanation, and there is no evidence of independent creation.

Bioworld concedes that it directly copied the Subject Photographs from the internet, another company's garment, and a digital file of unverified origin. Given the "direct evidence of copying," there is no need for this Court to engage in the substantial similarity analysis, which is rendered "irrelevant" by the direct copying. *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012). This is because "[s]ubstantial similarity is not an element of a claim of copyright infringement. Rather it is a doctrine that helps courts adjudicate whether copying of the constituent elements of the work that are original actually occurred when an allegedly infringing work appropriates elements of an original without reproducing it in toto." Id., 668 F.3d at 1154 (internal quotation marks omitted). Direct copying is at issue here. But, if the Court finds otherwise, the substantial similarity analysis makes clear that unlawful copying occurred, as follows:

a.   **Bioworld had an opportunity to access the Subject Photographs.**

To establish access, Lixenberg need only establish that Bioworld or a supplier had a "reasonable opportunity" to "view the plaintiff's work." *Three Boys Music Corp.*, 212 F.3d at 482, *citing* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, §13.02[A], at 13-19 (1999). This is done by establishing widespread dissemination of the works, **or** establishing a chain of events linking the plaintiff and infringer's works, **or** establishing a striking similarity between the works. *L.A. Printex Indus., Inc. v. Aeropostale, Inc.,* 676 F.3d 841, 846-847 (9th Cir. 2012). This review of these three bases is holistic as only a "reasonable opportunity" to view is necessary.

### i.   The photographs are "strikingly similar."

The similarities between the photographs at issue is so striking that access is established on this basis alone. Access should be established when the infringing work is "strikingly similar" to the plaintiff's work *Three Boys Music*, 212 F.3d at 485, *citing Baxter v. MCA, Inc.*, 812 F.2d 421, 423-424 (9th Cir.1987). To establish striking similarity, Lixenberg "must demonstrate that such similarities are of a kind that can only be explained by copying, rather than by coincidence, independent creation, or prior common source." *Testa v. Janssen*, 492 F. Supp. 198, 203 (W.D.Pa.1980), *quoting Stratchborneo v. Arc Music Corp.*, 357 F.Supp. 1393, 1403 (S.D.N.Y.1973). Here, the photographs on the Infringing Product are virtually identical copies of the Subject Photographs. See Exs. 1-4, 30. And, Bioworld concedes that it copied the Subject Photographs and that it has no evidence of independent creation. Burroughs Decl. ¶ 23, Ex. 31. Striking similarity should be found.

### ii.   The Subject Photographs were widely disseminated.

The Subject Photographs were published in Vibe magazine, other national publications such as books and magazines, in films and on the internet, and elsewhere before the infringement. Lixenberg Decl ¶¶ 6-7, Ex. 39; Ex. 8, Light Dep. pgs. 113:16-114:2 There can be no dispute that they were widely disseminated.

Widespread dissemination of an allegedly infringed work gives rise to an inference of access. *L.A. Printex*, 676 F.3d at 847-48 (finding distribution of 50,000 yards of a fabric design before infringement created a "reasonable possibility" of access). Here, the widespread distribution of the Subject Photographs in magazines, books, online at www.mtv.com, www.huffingtonpost.com, and other sites, through Corbis, a photography syndication agency, and in art projects establishes access. Lixenberg Decl. ¶¶ 6-7; Ex. 39. Indeed, Bioworld's designers for the Infringing Product admitted that they downloaded the four Subject Photographs and copied one from another company's garment and another from an unknown digital file. This widespread distribution and concession of copying establishes at least had a

reasonable opportunity to view the Subject Photographs.

### iii. The chain of events exists or should be presumed.

Bioworld admitted to copying the Subject Photographs from the Tumblr website. Ex. 41, pgs. 15:1-7; 17:1-6, 18:8-12; 19:24-20:4. This itself establishes the chain of events. And, to the extent further details are not in the record, such is the direct result of Bioworld's discovery misconduct, and are details solely available to Bioworld. When evidence necessary to establish access is solely within the possession of the infringer, and the infringer does not produce it, proof of access is unnecessary. *Friedman v. Live Nation Merchandise, Inc*., 2016 WL 4394585, at *8 (9th Cir. Aug. 18, 2016) ("this rule ['accords with . . . our general precedent that fairness dictates that a litigant ought not have the burden of proof with respect to facts particularly within the knowledge of the opposing party.[']"]) (citation omitted). Bioworld admits to copying the Subject Photographs from the internet and another company's infringing garment and a file of unknown origin, but concealed the identity of the designers who did the copying, and "trashed" the computer and files of its designer. So owing, Defendants should bear the burden of showing that what they copied was **not** her work. There is no such evidence.

### b. The photographs are at least substantially similar.

The Infringing Product bears photographs that are at least substantially similar to the Subject Photographs. The 9th Circuit applies a two-part test to ascertain whether the requisite similarity exists. *L.A. Printex Indus., Inc*., 676 F.3d at 848 (citation omitted). The "extrinsic test" is an "objective comparison of specific expressive elements" that focuses on the "articulable similarities" between the two works[,]" and the "intrinsic test" is a subjective comparison that focuses on "whether the ordinary, reasonable audience" would find the works substantially similar in the "total concept and feel of the works." Id. (internal quotations and all citations omitted). Notably, it is not necessary that an accused work be virtually identical to infringe. *L.A. Printex,* 676 F.3d at 851; see also *Universal Pictures Co., Inc. v. Harold Lloyd Corp*., 162 F.2d

354, 360 (9th Cir. 1947) ("infringement is not confined to literal and exact repetition or reproduction; it includes also the various modes in which the matter of any work may be adopted, imitated, transferred, or reproduced, with more or less colorable alterations to disguise the piracy."); 17 U.S.C.A. § 106(2)(artist may exclude others from creating derivative works).

### i.   Lixenberg satisfies the extrinsic test.

The extrinsic test is applied by examining the similarities in the respective works' "objective details in appearance," including, but not limited to, "the subject matter, shapes, colors, materials, and arrangement of the representations," as well as the "original selection, coordination, and arrangement of unprotectible elements[,]" which "may be protectible expression." *L.A. Printex Indus., Inc.*, 676 F.3d at 849 (internal quotations and all citations omitted). It is clear that the Subject Photographs were copied – the composition, lighting, negative space, posture, and appearance of the objective details and elements of the photographs are virtually identical. See Ex. 30. The only difference between the Subject Photographs and the photographs on the Infringing Product is the cruder appearance of the latter, which can be attributed to the photographs on the Infringing Product being low-resolution copies (as opposed to being created from the original negatives) and the fact that the Subject Photographs are printed sharply on film stock or paper and the Infringing Photographs are printed on fabric or other textured product. Id. Such differences are to be disregarded when reviewing similarity. *L.A. Printex* 676 F.3d at 851, citing *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 193 F.2d 162, 165 (1st Cir.1951) (finding differences in subsequent work caused by means of reproduction to be "inconsequential").

### ii.   Lixenberg also satisfies the intrinsic test.

While the intrinsic test is considered subjective, the Court should still grant summary judgment if it is shown that "the works are so overwhelmingly identical that the possibility of independent creation is precluded." *Twentieth Century- Fox Film Corp. v. MCA, Inc.,* 715 F.2d 1327, 1330 (9th Cir. 1983). The works here are

overwhelmingly identical. A review of the Subject Photographs and the photographs on the Infringing Product reveals the works' substantial similarity in concept and feel. Burroughs Decl. ¶25 Ex. 30. Lixenberg's distinctive vision is expressed in the overall tone, appearance, and feel of the works, and her unique selection and arrangement of subject matter, lighting, styling, overall composition, and vision is copied in the Infringing Product, as any reasonable viewer would conclude. Id. Her aesthetic gestalt has been taken, which satisfies this test.

### 3.     The Infringing Products are at least unlawful derivative works.

To the extent there are differences between the Infringing Products and the Subject Photographs, the former are unlawful derivatives of the latter. It is axiomatic that a copyright owner has the exclusive right "to prepare derivative works" from her original work. *DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th Cir. 2015), citing 17 U.S.C. § 106(2). Here, the Infringing Products are unlawful derivative works. A derivative work is a "work based upon one or more preexisting works that recasts, transforms, or adapts the preexisting work [...]" *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1015 (9th Cir. 2012). A work that is a modified version of a pre-existing original work is a "derivative work." 17 U.S.C. § 101. To constitute a violation of §106(2) the infringing work need only incorporate in some form a portion of the copyrighted work. *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984). Here, Bioworld downloaded, copied, and modified the Subject Photographs to create the Infringing Products, which Defendants, and each of them, then sold. Burroughs Decl. ¶¶ 6, 8, Ex. 10, Sokoloff Dep. II pgs. 56:12-58:19; 21:12-23:20. This further violates the Copyright Act. Summary adjudication of liability should be entered.

### C.     Bioworld and certain Retail Defendants' infringement was willful.

Defendants not only infringed, but infringed willfully. While not favored, summary adjudication of the issue of willfulness should be entered in certain circumstances. *Fodor v. Los Angeles Unified Sch. Dist.*, 2014 WL 12235424, at *16

(C.D. Cal. June 3, 2014) ("the Ninth Circuit has affirmed a district court's finding of willfulness on summary judgment where the record demonstrated that the defendant had actual knowledge of its copyright violation), citing *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990). Willfulness is proper here.

### 1.    Bioworld willfully infringed.

Bioworld, a sophisticated apparel company with substantial annual revenues and which has negotiated and executed numerous intellectual property agreements, copied the Subject Photographs from the internet, another company's infringing garment, and a digital file of unknown provenance. It then used those photographs on millions of dollars' worth of product. In doing so, did no due diligence to identify the photographer, never contacted the photographer, and failed entirely to obtain authorization for the use. And this copying occurred despite Bioworld's understanding that permission was required to use such photographs. Bioworld then continued to sell the Infringing Product for more than a year after first receiving notice of the infringement and months after being served with the complaint. This is willful.

Infringement is found willful upon a showing of knowledge, willful blindness, or reckless disregard of infringing activity. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1335-36 (9th Cir.1990). Such a showing is manifest here.

To refute evidence of willful infringement, the infringer must not only establish its good faith belief in the innocence of its conduct, it must also show that it was *reasonable* in holding such a belief. Id., 909 F.2d at 1336. citing 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 14.04[B], at 14–40.3 (1989). In this case, the only basis offered by Bioworld is that it had personae agreements with the Shakur and Wallace estates, but this testimony fails to create a triable issue because none of these agreements authorized the use of the Subject Photographs, which were not provided by the estates. Ex. 9, Monjauze Dep. pgs.182:25-183:17; Exs. 11-12. And none of these agreements authorized the use of photographs copied from either the internet or another company's infringing shirt. On the other hand, Bioworld's agreements with

the estates proves that Bioworld knew that permission was required to use the photographs, which compels a finding that the infringement was willful. Id.

And even if a triable issue existed at the time of Bioworld's initial infringement, it is not so now because Bioworld continued selling the Infringing Product after receiving *multiple* notices that said product was infringing. *Peer Int'l Corp.*, 909 F.2d at 1336 (infringer's declaration that it had no "intention to infringe upon the plaintiffs' copyrights" was insufficient to create a triable issue). Indeed, it is well settled that willfulness exists where an infringer continued to distribute the work at issue when it "knew that there was a question as to their ownership," and was "presented with evidence that [p]laintiff was the true owner[.]" *Dolman v. Agee*, 157 F.3d 708, 715 (9th Cir. 1998). Such is the case here. Bioworld received notice of Lixenberg's claims as to the Subject Photographs no later than April of 2015 and was served with this complaint in October of 2015. Burroughs Decl. ¶ 16, Ex. 10, Sokoloff Dep. II, pgs. 15:7-16:5; U.S.D.C. Dkt. No. 14. But, Bioworld continued to sell and ship the Infringing Product until at least March 7, 2016. Burroughs Decl. ¶ 16, Ex. 21. This establishes willfulness.

### 2.    The Retail Defendants willfully infringed.

Similarly, certain of the Retailer Defendants continued to market and sell the Infringing Product after receiving notice of infringement. No Retailer Defendants have provided any proof of inventory or removal of the Infringing Product from their sales floors. Burroughs Decl. ¶21. Indeed, it appears they just kept selling the Infringing Product until it sold out. Dates of notice and of continuing sales are set forth in Exhibit 29. Each of the Retailer Defendants identified in Exhibit 29 is willful for continuing to infringe after notice.[10] *L.A. Printex Indus., Inc. v. Lia Lee, Inc.*, 2009 WL 789877, at *7 (C.D. Cal. Mar. 23, 2009) (retailer found willful at summary

---

[10] And the evidence of Urban's willfulness is even stronger: it knew in 2008 that Lixenberg owned the "counting money" Wallace Photograph, agreed to cease use of it at that time, and thereafter worked with Bioworld to copy the photograph. Ex. 7.

1  judgment stage for continuing to sell infringing product after notice), citing *Peer Int'l*
2  *Corp.*, 909 F.2d at 1336.

3      **D.**    **The affirmative defense of apportionment is precluded.**

4      Upon a showing of infringement and resulting revenues, an infringer in certain
   circumstances may apportion those revenues by identifying other non-infringing
5  factors that were lawfully responsible for the revenues and are extricable from the
6  other product's other elements. Where, like here, the infringing products and the
7  infringed work are inseparable, apportionment is improper. This affirmative defense is
8  ripe for summary adjudication because, *inter alia*, the infringement was willful and
9  the Defendant had no lawful right to use what they claim is a basis for apportionment.
10

11      **1.**    **Willfulness precludes the application of apportionment.**

12      This Court should adjudicate that Bioworld and the other willful Defendants are
13  precluded from asserting any apportionment defense because the defense is not
14  available to willful infringers. See *ABKCO Music, Inc. v. Harrisongs Music, Ltd*., 508
15  F.Supp. 798, 801 n.10 (S.D.N.Y.1981), aff'd 722 F. 2d 988 (2d Cir. 1983)(willful
16  infringers cannot seek apportionment); *Smith v. Little, Brown & Co*., 273 F.Supp. 870,
17  874 (S.D.N.Y.1967), aff'd, 396 F.2d 150 (2d Cir.1968)(same, even when infringed
18  material was a relatively minor portion of the infringing product). *Knitwaves, Inc. v.*
19  *Lollytogs Ltd. (Inc.),* 71 F. 3d 996 (2nd Cir. 1995) another case dealing with infringing
20  garments, illustrates why Defendants cannot establish apportionment here. The
21  defendant in that case sold a two-piece garment set, one of which bore the infringing
22  work and the other of which did not. Id. at 1010. Defendants argued that the profits
23  from the blank garment should not be disgorged because that garment did not bear the
24  infringing design. Id. The Court disagreed, denying apportionment of these profits
25  because, *inter alia*, the defendant was willful in its infringement. Id.

26      Apportionment is justly denied to willful infringers because it is an equitable
27
28

defense.[11] *Data Gen. Corp. v. Grumman Sys. Support Corp*., 36 F.3d 1147, 1176 (1st Cir. 1994)(apportionment is "established upon equitable principles"), *abrogated by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010), citing *Sheldon v. Metro-Goldwyn Pictures Corp*., 309 U.S. 390, 402, 60 S. Ct. 681, 685, 84 L. Ed. 825 (1940)( "our decisions leave the matter to the appropriate exercise of the equity jurisdiction upon an accounting[.]").[12]

Willful copyright infringers are consistently denied equitable defenses. *Danjaq LLC v. Sony Corp*., 263 F.3d 942, 957 (9th Cir. 2001)(while court have "not had occasion to apply this willfulness exception in the recent past, we have previously recognized it, and it remains the law of this circuit.").[13] This denial is "based on the equitable maxim that [']he who comes into equity must come with clean hands[.]['']" Id. at 956, *citing Hermes Int'l v. Lederer de Paris Fifth Ave., Inc*., 219 F.3d 104, 107 (2d Cir.2000), *quoting Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co*., 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945), Indeed, "any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the" doctrine precluding an equitable defense. *Precision Instrument Mfg. Co.,* 324 U.S. at 815, 65 S. Ct. at 997–98, 89. Thus, willful infringement "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 841 (9th Cir.

---

[11] Though the defense is equitable in nature, it is addressed in connection with the calculation of damages by a jury.

[12] While most decisions address a plaintiff's conduct when addressing application of the doctrine, the reasoning should apply equally to a defendant's conduct in connection with an affirmative defense (on which defendant bears the burden).

[13] See also *Atari Games Corp. v. Nintendo of America, Inc*., 975 F.2d 832, 846 (Fed.Cir.1992) ("The Ninth Circuit has noted that doctrine of unclean hands can also preclude the defense of copyright misuse."); 4 Nimmer § 13.09[B] at 13–295 (equitable defense "should be denied ... when the defendant has been guilty of conduct more unconscionable and unworthy than the plaintiff's.").

2002) (citation omitted). The willful Defendants, in order to seek apportionment, must have "acted fairly and without fraud or deceit as to the controversy in issue." *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir.2000) (internal quotation marks omitted). Here, Bioworld and many of the Retailer Defendants did not act fairly, and committed willful infringement, which is by definition and on its face a "willful act." The defense should be precluded.

### 2.    Apportionment is precluded where infringer did not have the right to use the material for which apportionment is sought.

Apportionment based on the use of the personae of Shakur and Wallace must also be precluded because Bioworld did not have the right to depict Shakur and Wallace as it did on the Infringing Product. The estates of Wallace and Shakur,[14] through agents, at most authorized Bioworld to use the personae of Wallace and Shakur **only** as set forth in the library of photographs provided by each estate. Exs. 11-12. The evidence establishes that Bioworld had no right to use the personae of Shakur and Wallace as depicted in the Subject Photographs. Such use by Bioworld violates California Civil Code 3344.1(a)[15] and cannot be the basis for apportionment.

Surely, an infringer cannot seek apportionment, an equitable defense, based on material that the infringer uses in violation of a third party's rights. Here, Bioworld exploited the Wallace persona outside of the scope of its agreement by seeking out and exploiting unlicensed photographs of Wallace. And Bioworld has not produced any contract that authorizes it to exploit the Shakur persona at all, let alone one that allows it to exploit the Shakur likeness as depicted in the Subject Photograph. Ex. 12. Indeed, Shakur's estate *denies* granting Bioworld the right to use the Shakur persona

---

[14] Notably, Bioworld has failed to produce any executed agreement with the Shakur estate. Ex.12, Burroughs Decl. ¶ 26.

[15] This section provides: "[a]ny person who uses a deceased personality's name […] or likeness, in any manner, on or in products, merchandise, or goods […] without prior consent from the [decedent's successor or successors in interest], shall be liable for any damages sustained by the person or persons injured as a result thereof."

as set forth in the Shakur Photograph. Apportionment should be denied because Bioworld did not have the right to use the Wallace and Shakur personae as depicted on the Infringing Product.

### 3.   Bioworld concealed the identity of its designers and destroyed records, which should preclude any defense predicated on Genovez or Parker's use of the Shakur or Wallace likenesses.

Bioworld's discovery misconduct, as set forth above, precludes it from offering any defense relating to the deployment of the Wallace or Shakur likenesses by Genovez or Parker. This would include any apportionment defense. As discussed above and in previously submitted papers,[16] Bioworld concealed the identities of Genovez and Parker, despite a motion to compel and stipulation filed with the Court stating that such identities would be produced. And, Bioworld "trashed" Genovez's computer and files, terminated him, and then engaged in a fraudulent cover-up and *post facto* justification for the concealment. Ex. 10, Sokoloff Dep. II, pg. 67:11-20. This misconduct included oral and written misrepresentations to the Court and requires severe sanction.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires the disclosure of any witness "that the disclosing party may use to support its claims or defenses." *Hill v. U.S. Dep't of Homeland Sec.*, 570 F. App'x 667, 669 (9th Cir. 2014). Bioworld has asserted an apportionment defense, which relies on Parker and Genovez's use of the personae of Shakur and Wallace on product. Failing to timely disclose these witnesses violated this section and Bioworld's late disclosure, in its fourth supplemental discovery responses does "not cure this non-compliance." *Id., citing Henry v. Gill Indus., Inc.*, 983 F.2d 943, 947 (9th Cir.1993). This failure to timely disclose Genovez and Parker[17] has not been harmless, as Lixenberg was deprived of obtaining

---

[16] See **Exhibit 32** for brief and Court Order.

[17] Bioworld presents no justification not identifying Parker until November 2015.

their depositions until after she filed two motions to compel, and was forced to conduct those depositions during the last week of the discovery period. This requires the granting of relief. Id. (late disclosure of crucial witness, even though before the discovery cut-off, was not harmless). This failure should preclude Bioworld from presenting any apportionment defense. Id. (granting motion to exclude defense because witness identity was concealed).

Bioworld's "trashing" of what could have been the source of crucial evidence in this case – the computer, software, and files used by Genovez to develop the Infringing Product – also requires sanction. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (willful spoliation exists if the party has "some notice that the documents were potentially relevant to the litigation before they were destroyed.")(citation omitted). And, "because "the relevance of ... [destroyed] documents cannot be clearly ascertained because the documents no longer exist," a party "can hardly assert any presumption of irrelevance as to the destroyed documents." Id., *citing Alexander v. Nat'l Farmers Org*., 687 F.2d 1173, 1205 (8th Cir.1982). Bioworld's destruction of Genovez's computer and files, which may have included download data and design files, warrants sanction.

And Defendants' discovery misconduct goes further. Four of Bioworld's primary witnesses (Parker, Mallis, Taylor, Mayes) stated at their February 2017 depositions that they had *not even been asked to look* for documents or information related to discovery in this case (one, Mayes stated he looked for documents on his own volition and another, Carrie Mallis, stated that her charge was to search for emails between her and Rick Barlowe). Burroughs Decl. ¶ 28.

The discovery rules are in place to prevent just the sort of gamesmanship engaged in by Bioworld here. *Guzman v. Bridgepoint Educ., Inc*., 305 F.R.D. 594, 605 (S.D. Cal. 2015)(without sanctions, "[p]arties would be free to engage in the sort of "gamesmanship" Rule 26 intends to prevent by hiding witnesses and evidence[.]"), citing Fed.R.Civ.P. 26 advisory committee's note (1993). Bioworld's concealment and

spoliation violates not only the letter but the "spirit of Rule 26." Id., citing *Thomas v. Old Town Dental Grp., P.A.,* 300 F.R.D. 585, 589 (S.D.Fla.2014) (failure to sanction misconduct "would permit litigants to easily hide unfavorable witnesses with impunity"). Given the concealment and destruction and misconduct, Bioworld should be precluded from arguing that any profits from the Infringing Product should be apportioned based on its designers' use of the Shakur and Wallace likenesses.

### 4.   Bioworld concedes that there is no proper basis for apportionment.

Bioworld is responsible for commingling the infringing and non-infringing elements in the Infringing Product, and thus "must abide the consequences, unless [it] can make a separation of the profits so as to assure to the injured party all that justly belongs to him." *Sheldon v. Metro-Goldwyn Pictures Corp*., 309 U.S. 390, 406, 60 S.Ct. 681, 687, 84 L.Ed. 825 (1940). Bioworld cannot make this showing.

This is especially true given that apportionment is proper only when "the evidence suggests some division which may rationally be used as a springboard"  for apportionment." *Cream Records, Inc. v. Jos. Schlitz Brewing Co*., 754 F.2d 826, 829 (9th Cir. 1985), citing *Orgel v. Clark Boardman Co*., 301 F.2d 119, 121 (2d Cir.1962)("the defendants must be content to accept much of the embarrassment resulting from mingling the plaintiffs' property with their own."). Here, the Infringing Products are integrated garments, in which all elements have been intermingled to the point of merging. Per *Sheldon*, Bioworld must "abide the consequences" of this intermingling.

Bioworld's witnesses testified that apportionment was not possible for the Infringing Product because one can't extract the persona of a celebrity from his photograph or a product bearing his photograph. Burroughs Decl. ¶ 29, Ex. 33, Hessong Dep. pgs. 159:12-160:17; Ex. 40, Sokoloff Dep 27:22- 28:1 Unlike an album with ten songs, which a consumer may buy because they like one particular song, the garments and products at issue are integrated and not subject to division. For this reason, there simply is no reasonable basis on which to divide the elements of the

product. And this concession is echoed in Bioworld's discovery response, which fails to set forth any percentages or state anything other than its belief that the Wallace and Shakur persona are relevant. Id, ¶30 Ex. 35 (No. 16, pgs. 12-13).

**5.  Apportionment cannot exceed the amount paid by Bioworld.**

In the alternative, Bioworld should be precluded from seeking apportionment in any amount above $901,171.44, which it asserts is the amount it paid to the estates to use the personae at issue. See *Baisden v. I'm Ready Prods., Inc*., No. 4:08-CV-00451, 2010 WL 3766533, at *8 (S.D. Tex. Sept. 22, 2010) (such a basis has "a rational foundation."); Burroughs Decl. ¶ 31, Ex. 36.

**E.  The license defense fails.**

License is an affirmative defense and must be pled. Bioworld's answer asserts as a defense that its use of the Subject Photographs was lawful because Lixenberg licensed other parties to use the Subject Photographs. See U.S.D.C. Dkt. No. 80, 9:8-16. Bioworld's answer does **not** assert the defense that anyone other than Lixenberg – such as Remrylie or the estates – provided a license to use the works. As such, the defense is waived to the extent it relates to third-party licenses. *Worldwide Church of God v. Philadelphia Church of God, Inc*., 227 F.3d 1110, 1114 (9th Cir. 2000) (infringer did not plead defense so cannot assert it in response to a summary judgment motion)(citations omitted). This leaves Bioworld with the burden of establishing that Lixenberg authorized the use, a burden it cannot discharge, especially given that copyright licenses are construed to prohibit any use not expressly authorized. *S.O.S., Inc. v. Payday, Inc*., 886 F.2d 1081, 1088 (9th Cir. 1989). There is no evidence of any such license.

**F.  The statute of limitations defense fails.**

Lixenberg filed this case within three years of discovering the infringement, well within the statute of limitations. As such, she may recover all infringing revenues generated from infringing sales, not just those from the three-year period before the complaint filing. It is settled that "the statute of limitations does not prohibit recovery

of damages incurred more than three years prior to the filing of suit if the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004). Where, as here, a plaintiff does not and reasonably could not have discovered the infringement at issue before the commencement of the three-year limitation period, damages are permitted outside the three-year window. Id., *see also UMG Recordings Inc. v. Global Eagle Entertainment, Inc.*, 2016 WL 345179 (C.D.Cal. Apr. 20, 2016) (granting summary judgment and dismissing statute of limitations defense). Because Plaintiff discovered the infringement at issue in late 2014, tried unsuccessfully to resolve it, and then filed the case in September 2015, and no evidence indicates she discovered (or should have discovered) it earlier, the defense fails.

Defendants' invocation of the defense appears to rely on an *unrelated* company's infringement in 2007-2008. There, a company named Changes created an infringing shirt that bore one of Lixenberg's Wallace Photographs and sold those garments to Urban Outfitters. Lixenberg Decl., ¶ 11, Ex. 7. Upon discovery of the infringement, Lixenberg and her agent contacted Changes, Urban, and the Wallace estate, and reached an agreement that the garments would no longer be sold and that no future product bearing Lixenberg's photographs would be sold without her express prior authorization. The Changes products are not at issue in this case, and that dispute has nothing to do with the instant case other than that years later a Bioworld employee allegedly scanned and copied portion of the infringing Changes garment.

### G.   Defendant revenues from sales of the Infringing Product are set.

After liability is determined, the question of damages will be given to the jury. One element of damages is the profits earned by the Defendants through the infringement. "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue[…]"17 U.S.C. § 504(b). Here, Plaintiff has proven the infringers' gross revenues, as set forth in the attached Exhibits

14-18. Burroughs Decl. ¶ 13, Exs. 14-18. There can be no reasonable dispute as to the infringers' gross revenues – indeed, the sales numbers are those of Defendants.

### H.     Lixenberg is entitled to costs of proof.

Lixenberg should recover her costs of proof in an amount to be determined via further briefing as set by the Court. Federal Rules of Civil Procedure Rule 37(c) mandates the recovery of the reasonable expenses incurred in proving a matter that a party fails to admit in response to a request for admission. *Marchland v. Mercy Medical Center*, 22 F.3d 933, 936 (9th Cir.1994) (rule "mandates an award of expenses unless an exception applies."). Discovery responses should admit a request to the fullest extent possible, and explain in detail why other portions of a request may not be admitted. *Holmgren v. State Farm Mutual Automobile Insurance Company*, 976 F.2d 573, 579–81 (9th Cir.1992) (expenses awarded under Rule 37(c) for failure to properly qualify denials). Here, Bioworld denied the following requests for admission ("RFA"s), which go to the heart of the case, and did not qualify its responses:[18] **RFA No. 9**: Admit that YOU have no evidence to establish that the SUBJECT PHOTOGRAPHS are owned by any PERSON other than Plaintiff; **RFA No. 12**: Admit that YOU do not have a license or written agreement to use SUBJECT PHOTOGRAPHS in any way; **RFA No. 15**: Admit that YOU received notice of the alleged infringement at issue in this action from Plaintiff before the initiation of this lawsuit; **RFA No. 25**: Admit that YOU did not obtain a transfer of rights from any party that allowed YOU to use the images incorporated in the SUBJECT MERCHANDISE. See Exhibit 37(A).

Bioworld engaged in scorched earth discovery tactics in an attempt to substantiate these denials—it served at least twenty-nine (29) subpoenas (including subpoenas for Wallace's mother and daughter), held numerous depositions (including

---

[18] Additional RFAs were improperly denied by Bioworld, as well as Walmart and Urban Outfitters. See Ex. 37, parts A (Bioworld), B (Walmart) and C (Urban).

Plaintiff twice), and served at least five thousand pages of documents, as well as massive amounts of electronic data, all of which had to be reviewed to investigate the above denials. Burroughs Decl. ¶ 33, Ex. 38.

Unless Bioworld "acted reasonably in believing that it might prevail[]" regarding the fact in dispute, an award of expenses is mandated. *Marchand*, 22 F.3d at 937 (citation omitted). Bioworld did not act reasonably. No evidence ever supported any of the above denials, and all evidence supported admission. Burroughs Decl. ¶ 33, Ex. 37 (A). Yet, Bioworld maintained its position despite all evidence.

Hundreds of thousands of dollars in costs and attorneys' fees could have been avoided had Bioworld undertaken a good faith inquiry into Lixenberg's requests and provided clear and complete responses to these requests. *Washington State Physicians Insurance Exch. and Ass'n v. Fisons Corp*., 122 Wash.2d 299, 858 P.2d 1054, 1084 (1993) (rejecting argument that discovery request was not specific enough); *Milgram Food Stores, Inc. v. United States*, 558 F.Supp. 629, 636 (W.D.Mo.1983) (if party unable to agree with exact wording of request for admission, it should agree to an alternate wording or stipulation). And Bioworld failed to "set forth in detail the reasons why [it could not] truthfully admit or deny the matter." Fed.R.Civ.P. 36(a). Per Rule 37(c). So owing, Lixenberg should recover her costs of proof in an amount to be established through subsequent briefing.

## III.   THIS MOTION SHOULD BE GRANTED

For all of the foregoing reasons, Lixenberg respectfully requests that the Court grant this motion as set forth in the attached proposed order.

Respectfully submitted,

Dated:  February 6, 2017        By:     */s/ Scott Alan Burroughs*
Scott Alan Burroughs, Esq.
Justin M. Gomes, Esq.
DONIGER / BURROUGHS
Attorneys for Plaintiff
DANA RUTH LIXENBERG